IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

PAINT PLUS PRO CENTER                                                    PLAINTIFF
                                                          COUNTER-DEFENDANT

VS.                                          CIVIL ACTION NO.  3:06cv449 HTW-LRA

PPG ARCHITECTURAL FINISHES, INC                                    DEFENDANT
                                                           COUNTER-PLAINTIFF

VS.

MARK DAVIS                                              COUNTER-DEFENDANTS
ESTATE OF JUDITH DAVIS
LORIE HEDGEPETH


## MEMORANDUM OPINION AND ORDER

Before this  Court is the "Supplemental and Renewed Motion for Summary Judgment"

[docket no. 32] of defendant PPG Architectural Finishes, Inc. ("PPG").  This motion is

authorized by Rules 56(b) and (c),[1] Federal Rules of Civil Procedure.  Also pending, but now

made moot by the Court's ruling on the aforementioned  "Supplemental and Renewed Motion for

Summary Judgment," is:  Motion for Judgment or, in the Alternative, for a Trial Setting [docket

---

[1]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

no. 43] filed by PPG.  Defendant PPG defends here against the complaint of Paint Plus Pro

Center ("Paint Plus").   PPG  sold "Porter" brand paint to Paint Plus for the price of

$160, 431.21 and has not been paid.  In its Complaint against PPG, Paint Plus sues PPG under

theories calculated to avoid payment.  PPG has a third party claim against Mark Davis, the Estate

of Judith Davis and Lorie Hedgepeth.

## I. <u>FACTS</u>

The Court, having considered the pleadings and the evidence in the record, and the

arguments of counsel in open Court on August 22, 2007, finds the following facts:

The record establishes that Paint Plus  ordered and received, but did not pay for, "Porter"

brand paint from PPG Architectural Finishes, Inc. ("PPG")[2],[3].  The record also establishes the

total price of the paint ordered and received but not paid for as $160,431.21.[4]

 The Response to PPG's Motion (docket no. 36), filed by Paint Plus and the individual

co-defendants, Mark Davis, Lorie Hedgepeth, and the Estate of Judith Davis, tacitly conceded

these points, and Paint Plus's counsel expressly conceded them at oral argument.  Thus, Paint

---

[2]The Complaint erroneously named "PPG Industries, Inc." but the parties corrected this by stipulation.  *See* docket no. 6.

[3]*Lorie Hedgepeth Depo.* p. 17 line 10 & Ex. 1 (admitting December, 2005 letter from Paint Plus that acknowledges debt of "approximately $172,000"); *id.* at p. 20 lines 1-10 & Ex. 2 (admitting March, 2006 letter from Paint Plus's attorney acknowledging "at this point, they [Paint Plus] have accrued an unsecured debt of approximately $170,000 with your company"); *Complaint* ¶¶ 7, 9 (admitting that Paint Plus "incurred" "debts" to PPG); *Mark Davis [Co]Owner and 30(b)(6) designee] Depo.* p. 66 line 21 through p. 67 line 5 ("there is an amount Paint Plus did not pay PPG for products," and that amount is "probably 160; 160,000").

[4]*Mark Davis Depo.* p. 62 lines 13-20 *together with Lorie Hedgepeth Depo.* p. 39 lines 7-21 (the way to tell what is owed to PPG is to consult the invoices from PPG); Affidavit of Kevin Stiffler (attached to docket no. 32) (proving up invoices and showing that the total due is one hundred sixty thousand, four hundred thirty one and 21/100's dollars ($160,431.21) as of July 24, 2007)).

Plus's position was not to deny the purchases, or the failure to pay, but to offer two grounds for non-payment:

   A.   That PPG refused to allow Paint Plus to pay over a period of time; and

   B.   That PPG was responsible for Victor Schrock's d/b/a A&V Painting, decision to stop doing business with Paint Plus, and begin doing business with a Porter Paint dealership owned by Keith Sims.[5]

## II.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d

---

[5]*Complaint ¶¶* 7, 12 ("Paint Plus was "never offered any particularized options or suggestions by the Defendant/creditor that would permit reasonable repayment"); *Complaint ¶¶* 10, 12 (PPG "approached" Paint Plus customers "and requested them to buy the Porter Paint product from another dealer"); *Mark Davis Depo.* p. 18 lines 6-19:

Q.  And we'll start with your position.  What is your position in this case?

A.  My position in this case would be we were a dealer that provided a service to our customers, loyal to PPG, and when the times got tough, unlike they had helped us in the past, they bailed on us, and we could not understand why.

We tried to work thing out with them, but they refused.  We had no other option but to find some help, and in the process of doing that, they decided to go line up with our customer.  And between them two, however it happened, we feel like they, PPG, went behind our backs and tried to take our customer and ruin our business.

By "tr[y]ing to work things out" with PPG Mr. Davis meant that "in December of 2005" Paint Plus proposed paying PPG over a period of 5 years.  *Mark Davis Depo.* p. 20 lines 10-24.  PPG, according to Mr. Davis, did not respond to this proposal.  *Id.* p. 20 lines 23; p. 21 line 2.  *Accord id.* p. 77 lines 2-6 p. 77 lines 12-15 ("First of all, uncooperative.  Number two -- which they could have cooperated and we wouldn't be sitting here today.  Number two, their actions of going and taking my largest customer from me…. Q.  So uncooperative.  What was your second reason?  A. The collusion between A&V Painting and taking my largest customer away from me"); *id.* p. 67 line 14 through p. 72 line 19 (same).

3

407, 411 (5th Cir. 2003).  "A fact is 'material' if it 'might affect the outcome of the suit under governing law.' " *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001).  The nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial.  *See Celotex Corporation*, 477 U.S. at 322-23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Electric Industrial Company v. Zenith Radio Corp*., 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc*., 98 F.3d 179, 181 (5th Cir. 1996);  *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir.2003);  *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001).  Furthermore, only reasonable inferences can be drawn from the evidence in favor of the nonmoving party.  *Eastman Kodak Company v. Image Technical Services, Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).  "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id*. at 468-69, 112 S.Ct. 2072.  The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence."  *Anderson*, 477 U.S. at 247-48, 106 S.Ct. 2505;  *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir.1997), cert. denied, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999).  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  *Brown*, 337 F.3d at 540;  *Bridgmon v. Array Systems Corporation*, 325 F.3d 572,

4

577 (5th Cir. 2003);  *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.),

*cert. denied*, 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002).  Summary judgment is

mandated if the nonmovant fails to make a showing sufficient to establish the existence of an

element essential to its case on which it bears the burden of proof at trial. *Nebraska v. Wyoming*,

507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993);  *Celotex Corporation*, 477 U.S. at

322, 106 S.Ct. 2548.

### III.  MISSISIPPI LAW

The parties are before this court on the jurisdictional grant of diversity of citizenship,

Title 28 U.S.C. § 1332.[6]  Accordingly, following the dictate of  *Erie R.R. Company v. Tompkins*,

304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court applies the substantive law of the

State of Mississippi to this controversy.

### IV.  ANALYSIS

Paint Plus' first ground for non-payment, that PPG refused to allow Paint Pro to pay over

a period of time, is legally insufficient.  While it is undisputed that PPG exercised forbearance

on at least one previous occasion,[7] Paint Plus has not, either in its written response to PPG's

Motion or at oral argument, identified any authority or other reason for concluding that such

---

[6]Title 28 U.S.C. § 1332 provides in pertinent part:

(a)  The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

(1)  citizens of different States;  ...

[7]*See Mark Davis Depo. P. 18 lines 23-25* ("Back about four or five years ago, we owed them some money and we went to them and asked them to work whatever the account was, and they did").

5

forbearance obligated PPG to exercise forbearance in the instant case.  There is, for example, no evidence that would support a finding of estoppel or waiver.

Paint Plus' first ground for non-payment is also factually insufficient.  The record establishes that the purchases in question were made from August 2005 through April of 2006;[8] that the vast majority of such payments were long overdue in July of 2006, when this suit was filed;[9]  that PPG did in fact forbear to a significant degree;[10]  and that, in any event, it was Paint Plus, not PPG, that initiated litigation.

Paint Plus' second ground for non-payment, regarding Victor Schrock, is legally insufficient.  Although all parties have alleged that some sort of written agreement existed between PPG and Paint Plus, under which Paint Plus operated as an authorized dealer of Porter Paints,[11] Paint Plus has taken the position "that no signed or acknowledged contract exists between the parties to the litigation."[12]  More specifically, when PPG submitted a copy of what it claimed was the Dealer Agreement, Paint Plus denounced it as a forgery.[13]

---

[8]Summary of PPG Invoices, attached to PPG's Supplemental and Renewed Motion for Summary Judgment, docket no. 32, as Exhibits H & I.

[9]*Id.*

[10]*Lorie Hedgepeth Depo*. p. 45 lines 10-15 ("Q: You requested an extension on certain invoices right after Hurricane Katrina, correct? A: We did for those things that were due – well, we asked for an extension – what they did was give us an extension of two months on everything").

[11]*See, e.g.,* Complaint, docket no. 1; Answer and Counterclaim, docket no. 2.

[12]*See* Response to Supplemental Motion for Summary Judgment, docket no. 36, ¶3.

[13]Response to PPG's Motion for Summary Judgment, docket no. 15, at p. 1.

At oral argument, Counsel for Paint Plus argued that the jury might look to the allegedly-forged Dealer Agreement for evidence of the terms of the "missing" Dealer Agreement.[14]  This argument has several fatal flaws.  To begin with, the allegedly-forged Dealer Agreement would be inadmissible.  Moreover, any correlation between the allegedly-forged Dealer Agreement and the "missing" Dealer Agreement would be pure speculation.  Counsel for Paint Plus also stated that he had a copy of a Dealer Agreement that does not bear any signatures, but he did not suggest that it could be made admissible.

Thus, while evidence in the record is sufficient to allow a jury to find that some such agreement existed, nothing in the record would allow the jury to find what the terms of that agreement were.  This is fatal to Paint Plus' second ground for non-payment, which is based on the assumption that the Dealer Agreement restricted in some way PPG's otherwise-acknowledged right to deal with whomever it pleased, including Victor Schrock.[15]

At oral argument, Counsel for Paint Plus contended that the absence of any evidence as to the *terms* of the "missing" Dealer Agreement was not fatal, because every contract carries with it an implied duty of good faith and fair dealing, and a jury could find that PPG's contacts with Mr.

---

[14]Counsel for Paint Plus was also given the opportunity to withdraw the claim of forgery, and accept as authentic the copy of the Dealer Agreement submitted by PPG, but he elected not to do so.

[15]*See, e.g., Complaint*, docket no. 1 ¶¶ 5-6 ("By virtue of said dealer agreement . . . [PPG] agreed to use 'its best efforts to support the development, promotion and marketing of the products offered to' Paint Plus"); *id.* ¶16 (PPG "caused Plaintiff damages by failing to act in accordance with the dealer and distributor agreement entered into on September 24, 1997.  Defendant [PPG] Industries breached the duty of loyalty and the duty of good faith and fair dealing.  By encouraging customers of Paint Plus to buy the Porter Paint elsewhere, Defendant breached the dealer and distributor agreement"); *id.* ¶¶ 17, 18, & "Prayer for Relief" ¶¶ 1 (all referencing the dealer agreement); *Response to PPG's Motion for Summary Judgment*, docket no. 36, p. 2 ¶4 ("Victor Schrock, the 'main customer' of the respondent herein, was lured away from doing business with and purchasing product from Paint Pro Plus center **at a time when there was a dealership agreement between PPG and Paint Pro Plus Center**") (emphasis supplied).

Schrock violated that implied covenant.  PPG countered by observing that under *Cenac v. Murry,* 609 So.2d 1257, 1272 (Miss. 1992), arguably the leading Mississippi case on the implied covenant, "good faith" is defined as "the faithfulness of *an agreed purpose* between two parties, a purpose which is *consistent with justified expectations* of the other party." *Cenac,* 609 So. 2d at 1272 (emphasis added).[16]  PPG argued that without any evidence as to the terms of the "missing" Dealer Agreement, a jury would have no knowledge of the parties' "agreed purpose" or "justified expectations," and, thus, no way to determine whether PPG's contacts with Mr. Schrock were faithful to that purpose and consistent with those expectations.[17]

The Court is persuaded that PPG's position is consistent with Mississippi law, and that Paint Plus' position is not.  No authority exists under Mississippi law for the notion that an implied covenant can, as it were, hover in the air, unsupported and undefined by evidence of the underlying express agreement.

Paint Plus' justification for non-payment based upon the Schrock matter is also compromised by the facts.  While Paint Plus's representatives testified that they suspected PPG of misconduct, they admitted that they have no personal knowledge of same.[18]  Paint Plus simply

---

[16]*See also Erickson v. Smith*, 909 So.2d 1173, at 1183 ¶28 (Miss. Ct. App. 2005) (making this same point about *Cenac* ).

[17] PPG observed, for example, that the Dealer Agreement might provide Paint Plus with an exclusive franchise, or it might be expressly non-exclusive (in which case as a matter of law the implied covenant would not avail Paint Plus, *see Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480, 485 (5th Cir. 1984) (La. Law) (where license to operate as a Holiday Inn was expressly "non-exclusive," claim that setting up a competing Holiday Inn breached the implied covenant failed as a matter of law)). Or it might be anything in between.

[18] Mr. Davis (for himself and as 30(b) (6) representative for Paint Plus) admitted that he has no firsthand knowledge to support his suspicions.  *Mark Davis Depo.* p. 91 lines 4-15 (Davis admits that he has no first-hand knowledge of any conversations between PPG and Schrock);  p. 44 line 16 ("I don't know what their arrangements are"); p. 45 lines 1-12 ("I know PPG is behind it because the word has gotten around," but admits that he has no personal knowledge of anything that PPG has said or done); p. 46 lines 7-24 (Davis admits PPG has never said to him anything

submitted two documents, a May, 2006, Credit Application from Mr. Schrock to PPG, and a

January, 2007, UCC Financing Statement showing PPG as the creditor and Mr. Schrock as the

debtor.[19]   The record establishes without contradiction, however, that Mr. Schrock (not PPG)

approached PPG about becoming a Porter Paint dealer;[20] that he did so only after becoming

dissatisfied with Paint Plus;[21] that PPG was initially unreceptive;[22]  and that talks between Mr.

Schrock and PPG never even got to the point of discussing location or prices.[23]

Mr. Schrock summed up the situation in these words:  "I actually didn't want to open a

store.  I was strictly hoping Mark would get his [expletive] together and tighten up, plain and

simple. He screwed himself."[24] Asked to explain he continued:

> Q.  By saying "he screwed himself," are you referring to the failure to deliver the
> product?

---

about PPG selling paint to Schrock).  Co-owner Lorie Hedgepeth also admits having no first-hand knowledge. *Lorie Hedgepeth Depo.* p. 28 line 6 through p. 29 line 1; *id.* p. 28 lines 11-19 ("Victor Schrock … it appears to us, has made some sort of arrangements with PPG either directly or indirectly to purchase his product other than through us. … Q: Have you had any conversations with Victor Schrock about his? … A: No"); *id.* p. 47 lines 2-22 (admits has no personal knowledge of any relationship between PPG and Schrock); p. 50 lines 1-7 (same).

[19] *See* Docket no. 36, Exhibits B and C.

[20] *Victor Schrock Depo.* p. 31 lines 5-20; p. 33 lines 10-23.

[21]"[A]fter Mark quit carrying Porter, quit servicing me, and quit delivering to me, I went to a different paint store . . . He quit servicing me, quit carrying Porter, so I went to Porter to find out what I could do to continue to get paint." *Victor Schrock Depo.* p. 10 lines 8-16. *See generally* Memorandum in Support of Supplemental and Renewed Motion for Summary Judgment, docket no. 33, pp. 5-8 (detailing Mr. Schrock's dissatisfaction).

[22] *Victor Shrock Depo.* p. 33 lines 10-23; *id.* p. 37 lines 14-20.

[23]*Victor Schrock Depo.* p. 37 lines 8-13 (credit application; no discussion of pricing); p. 44 lines 1-8 (process never got as far as looking at location).  Mr. Schrock ultimately decided that business conditions were not right for opening a paint store. *Victor Schrock depo.* p. 35 line 20 through p. 36 line 7.

[24] *Mark Davis Depo.* p. 49 lines 21-23.

9

A.  He didn't give me service.  Yes, sir.  **He quit selling** --
Q.  The prices being too high?
A.   **Porter, he raised his prices too high, he quit delivering to me.**  I mean, he quit doing what he had done for years.  It's his fault that he was in the problem.  He quit doing what he had done for me for nine years.

&ast;  &ast;  &ast;  &ast;

Q.  Mr. Schrock, did PPG or any representative of PPG ask you      to quit buying from Mark Davis?

A.  No ma'am.

Q: Did any representative of PPG ever ask you to quit buying paint from Paint Plus Pro Center?

A:  No ma'am.[25]

The evidence in the summary judgment record simply will not support a finding that PPG was responsible for Victor Schrock, d/b/a A&V Painting's decision to stop  doing business with Paint Plus.

## V.  HOLDING

Based on the forgoing PPG is entitled, as a matter of law, to judgment against Paint Plus in the amount of one hundred sixty thousand, four hundred thirty one and 21/100's dollars ($160,431.21).  As Counsel for PPG admitted in oral argument, PPG is not entitled to judgment against Paint Plus for its attorneys' fees, because PPG's claim against Paint Plus for attorneys' fees was based on the Dealer Agreement, and, as Paint Plus has pointed out, "no signed or acknowledged contract exists between the parties to the litigation."[26]

---

[25]*Victor Schrock Depo.* p. 49 line 24 through p. 50 line 8 (emphasis supplied); p. 64 lines 9-14.

[26] Response to Renewed Motion for Summary Judgment, docket no. 36, ¶3.

In addition to offering two grounds for non-payment, Paint Plus' Complaint attempts to make the Schrock ground the basis for a claim for "economic damage and a loss of business and sales."[27]  Based on the foregoing, PPG is also entitled, as a matter of law, to judgment on this claim.

 PPG additionally is entitled, as a matter of law, to judgment on this claim because the measure of damages for any such claim would be lost *profits,*[28]  but there is no evidence in the record of any lost profits.  Indeed, the record establishes, and Paint Plus' response to PPG's Motion tacitly concedes, that since it began doing business over ten years ago Paint Plus has made a profit in only one of those years, and that profit was a mere two hundred dollars.[29]

PPG's counterclaim seeks judgment not only against Paint Plus but also against Mark Davis, Lori Hedgepeth, and the Estate of Judith Davis, based on personal guaranties that each of these individuals signed.  The guaranties are in the record, and are admittedly authentic.[30]

---

[27] *Complaint* ¶17 & Prayer for Relief ¶1.

[28] *See Cenac v. Murry*, *supra*, 609 So.2d 1273-1274 at (remedy for breach of implied covenant of good faith and fair dealing that damaged store is lost profits, proven by "[e]vidence such as financial statements of the store's operation prior to and since [Defendant's misconduct]. . . . While absolute certainty in the proof of damages is not required, reasonable certainty is; and, the measure of recovery cannot be based on pure conjecture or speculation.  Further, it goes without saying that [Plaintiffs] bear the burden of proof to prove their damages") (citations omitted).

[29] *Lorie Hedgepeth Depo.* p. 36 lines 12-23. *See Webb v. Braswell,* 930 So. 2d 387, 398 ¶19 (Miss. 2006) (law permits recovery of lost profits only where business had been profitable; "In today's case, the testimony was proffered for one purpose, to show damages of lost profits as a result of unplanted crops. The Webbs brought this testimony forward without ever establishing that they were profitable. Rather, the Webbs had been farming and operating at a loss in the years prior to the farming year which is the subject of this litigation. Therefore, the amount of damage allegedly resulting from the unplanted crops was not reasonably ascertainable based on the Webbs' past experience, as the rule requires").

[30]*See Answer, Defenses, and Counterclaim on Behalf of PPG Industries, Inc.* ¶8, *together with Counter Defendants' Mark Davis, Lorie Hedgepeth, and the Estate of Judith Davis's Response to Counterclaim* ¶8 (admitting same). *Accord Complaint* ¶7 (admitting guaranties); *Mark Davis Depo. [Co]Owner and 30(b) (6) designee]* p. 102 lines 11-22 (same); *Lorie Hedgepeth Depo.* p.

Although the response to PPG's motion did not mention the guaranties, at oral argument Counsel for the Guarantors suggested that the guaranties were in some way tied to, or conditioned upon, the Dealer Agreement, and the fact that "no signed or acknowledged contract exists between the parties to the litigation"[31] somehow defeats PPG's claim on the guaranties. The guaranties, however, make no reference to the Dealer Agreement and are, in fact, expressly unconditional.[32]  In them, the Guarantors request PPG (emphasis supplied) to:

> Please sell and deliver to [name of Guarantor], the delivery address and sales to Paint Plus Pro Center, Inc., located at 116 Clinton Blvd., Clinton, MS 39056, or representatives, on credit terms of sale, such goods, wares and merchandise as they or their representatives may order and select, and in consideration whereof I/We jointly and severally, hereby fully Guarantee and hold myself/ourselves personally responsible for the payment at maturity of the purchase price of all such goods, wares and merchandise so sold or delivered, whether evidenced by open account, note, or otherwise. . . .
>
> **This is an unconditional Guarantee and shall not be affected by** release of any collateral or any co-guarantor, extension of time for payment, or **any other act of [sic] failure to act by Porter Paints** whereto similar or dissimilar.

As a matter of law, then, PPG is entitled to judgment against each of the Guarantors, jointly and severally, for the amount of Paint Plus' debt, $160,431.21.  In addition, because the Guaranties also expressly obligated the Guarantors to pay all costs of collection, "including a reasonable Attorney's fee,"[33] and because PPG's Motion

---

21 line 14 through p. 22 line 5 (same).

[31] Paint Plus' Response to Motion for Summary Judgment, docket no. 36.

[32]Copies of the guaranties are in the record as exhibits to PPG's Supplemental Motion for Summary Judgment, docket 32, exhibit 7.

[33] The clause reads in full as follows:

Now, should it become necessary to place this Guarantee with an Attorney for collections, suit or other legal action, I/We hereby agree to pay all costs of such

establishes, and the response thereto tacitly concedes, that a reasonable fee in these circumstances would be $38,923.72, the Court finds that this fee is in fact reasonable. PPG is, therefore, entitled to judgment against each of the Guarantors, jointly and severally, for $199,354.93 (debt of $160,431.21 plus attorneys' fees of $38,923.72).

## VI.  CONCLUSION

It is, therefore, Ordered and Adjudged that PPG's motion for summary judgment against Paint Plus, Mark Davis, Estate of Judith Davis and Lorie Hedgepeth [docket no. 32] be granted.

It is further Ordered and Adjudged that PPG's additional motion for judgment or, in the alternative, for a trial setting [docket # 43] is denied as moot because of the aforesaid ruling.

In accordance with the Local Rules, the Court will enter a Final Judgment.

SO ORDERED AND ADJUDGED, this the 11th day of June, 2008.

s/ HENRY T. WINGATE
CHIEF UNITED STATES DISTRICT JUDGE

Civil Action No. 3:06-cv-449 HTW-LRA
Memorandum Opinion and Order

---

collections, suit or legal action, including a reasonable Attorney's fee.